# In the United States Court of Federal Claims

No. 14-625L

(Filed: April 26, 2017)

| | | |
|---|---|---|
| ************************************* * | | |
| CHICAGO COATING CO., LLC, et.al., | * | |
| | * | |
| Plaintiffs, | * | Rails-to-Trails Case; National Trails System Act, 16 U.S.C. § 1241 (2006); Illinois Property Law; Deed Interpretation; Easement; Fee Simple. |
| v. | * | |
| THE UNITED STATES, | * | |
| Defendant. | * | |
| ************************************* * | | |

*Steven M. Wald* with whom were *Michael J. Smith, Thomas S. Stewart,* and *Elizabeth G. McCulley*, Stewart Wald & McCulley, LLC, St. Louis and Kansas City, Missouri, and *J. Robert Sears*, Baker Sterchi Cowden & Rice, LLC, St. Louis Missouri, for Plaintiffs.

*Edward C. Thomas*, with whom were *John C. Cruden*, Assistant Attorney General, Natural Resources Section, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., and *Evelyn Kitay*, Associate General Counsel, Surface Transportation Board, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

      The Plaintiffs in this "rails-to-trails" case seek just compensation for an alleged Fifth Amendment taking of their reversionary property interests in segments of a dormant rail corridor under the National Trails System Act. The Plaintiffs argue that their predecessors-in-interest conveyed only an easement in the rail corridor to the railroad company and the Government's contemplated conversion of the rail corridor to recreational trails amounts to a taking of their property. In response, the Government argues that the Plaintiffs have no cognizable property interest in the rail corridor because their predecessors-in-interest conveyed a fee simple to the railroad company. As explained

below, the Court finds that the Plaintiffs' predecessors-in-interest conveyed the relevant segments of the rail corridor to the railroad in fee simple.  Since the Plaintiffs have no cognizable property interest in the rail corridor, the Court GRANTS the Government's cross-motion for summary judgment and DENIES the Plaintiffs' motion for partial summary judgment.

## Background

### A. History of the Nation's Railroads and the National Trails System Act

The Interstate Commerce Act of 1887 gives the Surface Transportation Board ("STB") exclusive and plenary authority over the construction, operation and abandonment of the nation's rail lines.  Chicago & Nw. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 312 (1981).  A railroad company may not cease to provide service on a particular rail line without first receiving express consent from the STB.  Colorado v. United States, 271 U.S. 153, 165 (1926).  Historically, a railroad company had two options if it wished to stop providing rail line service.  First, it could apply to the STB for permission to "cease operating a line for an indefinite period while preserving the rail corridor for possible reactivation of service in the future."  Preseault v. ICC, 494 U.S. 1, 5 n.3 (1990) ("Preseault I").  Alternatively, a railroad company could seek permission to permanently terminate service by initiating abandonment proceedings.  If the STB approved the abandonment, the rail line was removed from the national transportation system and the STB's jurisdiction over the underlying land ended.  Id.; Hayfield N. R.R. Co., Inc. v. Nw. Transp. Co., 467 U.S. 622, 633 (1984).  State law then governed the disposition of the underlying land.  Preseault I, 494 U.S. at 5-6.

Concerned about the loss of property interests in the nation's rail corridors, Congress enacted the National Trails System Act Amendments of 1983 to the National Trails System Act of 1968.  16 U.S.C. § 1241 et seq. (2006) ("Trails Act").  Section 8(d) of the Trails Act provided an alternative to initiating abandonment proceedings called "railbanking".  Preseault I, 494 U.S. at 6.  Railbanking allows a third party to temporarily convert the rail line to a recreational trail and "assume full responsibility" for the management of the right-of-way while preserving the right-of-way for future rail line use.  16 U.S.C. § 1247; Preseault I, 494 U.S. at 6-7.  In order for a rail corridor to be railbanked, a railroad must first initiate the STB's abandonment process.  49 C.F.R. §§ 1152.29, 1152.50.  Then, a party interested in acquiring the corridor for railbanking must request that the STB issue a Certificate of Interim Trail Use ("CITU") or a Notice of Interim Trail Use ("NITU").  49 C.F.R. § 1152.29(c)-(d).  The purpose of the CITU or NITU is to preserve the STB's jurisdiction and prevent the application of state reversionary property law.  Caldwell v. United States, 391 F.3d 1226, 1229-30 (Fed. Cir. 2004).  If the railroad is willing to negotiate a railbanking agreement, the STB will issue the CITU or NITU.  Preseault I, 494 U.S. at 7 n.5.  If negotiations are successful, the STB suspends abandonment proceedings and the interested third party establishes recreational trails on

the rail corridor. The Trail Act states that interim trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d). If negotiations are unsuccessful, the railroad may continue to pursue abandonment proceedings before the STB. 49 C.F.R. § 1152.29(d)(1).

The Trails Act's railbanking provision has created a new category of Fifth Amendment takings cases before this Court, referred to as "rails-to-trails" cases. See Pls.' Mot. at 2-4 (listing cases in which plaintiffs seek relief for an uncompensated taking under the Trails Act). The Preseault cases are the seminal cases establishing the existence of a takings claim under the Trails Act. Preseault I, 494 U.S. 1; Preseault v. United States, 100 F.3d 1525 (Fed. Cir. 1996) ("Preseault II"). The Preseaults were Vermont property owners with land adjacent to the Vermont Railway's railroad easement. The Government issued a CITU allowing the rail line to be converted to a trail and the Preseaults challenged the constitutionality of the CITU in federal court. Preseault I, 494 U.S. 2-4. In Preseault I, the Supreme Court unanimously held that railbanking under the Trails Act gave rise to just compensation claims under the Fifth Amendment because the Trails Act prevented property interests from reverting under state law. 494 U.S. at 13. The Preseaults then filed a takings claim before this Court which was dismissed because the Preseaults "had no reasonable expectation of obtaining a reversion by operation of state law." Preseault v. United States, 27 Fed. Cl. 69, 92 (1992). The Federal Circuit reversed and remanded holding that the operative question is whether the conversion of the right-of-way to a recreational trail constituted a taking given the scope of the railroad's *initial* easement, not the expectations of the current landowners. Preseault II, 100 F.3d at 1542-44.

B. Relevant Facts of this Case

On October 26, 1874, the Common Counsel for the City of Chicago issued an ordinance granting Chicago & Southern Railroad Company permission to operate a rail corridor. Def.'s Cross-Mot., Ex. 2. After receiving permission from the city, the Chicago & Southern Railroad Company proceeded to secure rights to the lands needed to construct rail lines by seeking deeds from the property owners adjacent to the rail corridor (called "source deeds"). Through various purchases and consolidations, BNSF Railway ("BNSF") eventually became the successor-in-interest to Chicago & Southern Railroad Company. See Def.'s Cross-Mot. at 7-8.

The case involves two segments of the railroad corridor originally operated by Chicago & Southern Railroad Company, one abutting Plaintiff Chicago Coating Company, LLC's ("Chicago Coating") property and one abutting Plaintiffs Ignacio and Benjamin Martinez's ("Martinez brothers") property, and two source deeds. Pls.' Mot. at 15-16; Def.'s Cross-Mot. at 6. The first source deed, dated April 1, 1875, is from Marjory and John Edward Wilkins to Chicago & Southern Railroad Company ("Wilkins Deed") and conveys interest in property known as "Block (13) thirteen". Def.'s Cross-Mot., Ex. 3 at 2. Block thirteen currently adjoins the Martinez brothers' property. Pls.' Mot. at 16. Both

3

parties agree that the Wilkins Deed is dispositive of BNSF and the Martinez brothers' ownership interests in the rail corridor abutting the Martinez's property. Def.'s Cross-Mot. at 7; Pls.' Resp. at 13.[1] The second source deed, dated April 22, 1878, is from Daniel and Harriet Jones to Henry A. Rust ("Jones Deed"). Def.'s Cross-Mot., Ex 4. While Mr. Rust's connection to Chicago & Southern Railroad Company is unclear, both parties agree that the Jones Deed is the correct source deed for the rail corridor adjoining Chicago Coating's property. Def.'s Cross-Mot. at 7; Pls.' Mot. at 15.

On December 21, 2012, BNSF filed a Notice of Exemption with the STB initiating proceedings to abandon the rail corridor. Pls.' Mot., Ex. A. On January 29, 2013, the Chicago Department of Transportation filed a petition with the STB indicating that it was interested in negotiating a railbanking and interim trail use agreement with BNSF for the rail corridor. Def.'s Cross-Mot., Ex. 11. Since BNSF did not object, the STB issued a NITU on April 9, 2013 allowing BNSF to abandon the rail corridor on April 9, 2014 if a trail use agreement was not reached with the Chicago Department of Transportation by October 6, 2013. Id., Ex. 12; Pls.' Ex. C. After the Chicago Department of Transportation applied for several extensions, the STB extended the negotiation period to September 2, 2017. Def.'s Cross-Mot. at 9; Dkt. No. 41 (April 20, 2017 Status Conference Order). As of this date, BNSF has not abandoned the rail corridor.

On July 18, 2014, the Plaintiffs filed a complaint in this court (which was later amended on December 31, 2014) and the case was assigned to Judge Edward Damich. See Dkt. Nos. 1, 11. On August 26, 2015, the case was transferred to Judge Victor Wolski. See Dkt. No. 20. Before Judge Wolski, the parties fully briefed and presented oral argument on cross-motions for summary judgment on liability. See Dkt. Nos. 27-30, 33, 36. On March 31, 2017, the case was transferred to Judge Thomas Wheeler. Dkt. No. 39. After careful review of all filings in this case (including the transcript of the July 14, 2016 oral argument before Judge Wolski) and a status conference on April 20, 2017, the cross-motions for summary judgment are ripe for resolution.

Discussion

Summary judgment should be granted when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." RCFC 56(a). A fact is "material" if it might significantly alter the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing that there exists no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment will

---

[1] The Plaintiffs initially argued that a City of Chicago ordinance was dispositive of the railroad's ownership interest in block thirteen. See Pls.' Mot. at 16. However, the Plaintiffs now agree that the Wilkins Deed is the appropriate document to determine the interests of BNSF and the Martinez brothers in the relevant segment of the rail corridor. See Pls.' Resp. at 13.

4

not be granted if the "evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. However, when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The Fifth Amendment of the U.S. Constitution states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. In order to successfully allege a Fifth Amendment taking upon the issuance of a NITU, plaintiffs must prove that "state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." Caldwell, 391 F.3d at 1228 (citing Preseault II, 100 F.3d at 1543). Following Preseault II, the Federal Circuit developed a three-part liability test for whether a plaintiff is entitled to compensation in a rails-to-trails case. First, plaintiffs must show that they have an ownership interest in the segments of the rail corridor where the railroad company possesses an easement. Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373 (Fed. Cir. 2009). If the railroad company owns the pertinent portion of the rail corridor in fee simple, then the Government has no takings liability. Preseault II, 100 F.3d at 1533. Second, if the railroad only possesses an easement, Plaintiffs must show that trail use falls outside the scope of the easement. Ellamae Phillips Co., 564 F.3d at 1373. Finally, even if trail use is within the scope of the easement, plaintiffs may still prevail if the rail corridor was abandoned before the STB issued the CITU or NITU. Id. Only the first two parts of the test are at issue in this case. Pls.' Mot. at 1 n.1 ("While Plaintiffs believe the land was abandoned, Plaintiffs have decided to argue in this motion only that recreational trail use was beyond the scope of the railroad purpose easements . . . .").

Given the parties' agreement that the Jones Deed and the Wilkins Deed are dispositive of the property interests relevant in this case, determining the property interests of the parties and the scope of any existing easements is purely a matter of deed interpretation. See Def.'s Cross-Mot. at 13, 17; Pls.' Mot. at 19; Pls.' Resp. at 13. Therefore, summary judgment is appropriate in this case. RCFC 56(a).

Analysis of Plaintiffs' Deeds

In order to address the first part of the Ellamae Phillips Co. liability test, the Court must decide whether the Jones Deed and the Wilkins Deed conveyed BNSF's predecessor-in-interest fee simple rights or easements. If BNSF owns the relevant segments of the rail corridors in fee simple, then the Government cannot have committed a Fifth Amendment taking of the Plaintiffs' property by issuing the NITU and the Court need go no further. Ellamae Phillips Co., 564 F.3d at 1373; Preseault II, 100 F.3d at 1533.

Illinois property law governs the interpretation of the two deeds in this case. Preseault I, 494 U.S. at 8, 16. Under Illinois law, a deed is construed to give effect to the

5

intention of the parties.  Keen v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co., 64 N.E.2d 499, 502 (Ill. 1945); Penn Cent. Corp. v. Commonwealth Edison Co., 512 N.E.2d 118, 119 (Ill. App. Ct. 1987); Sowers v. Illinois Cent. Gulf R.R. Co., 503 N.E.2d 1082, 1084 (Ill. App. Ct. 1987).  In order to ascertain the intent of the parties, courts should consider the document as a whole and give effect to every word of the deed if possible. Keen, 64 N.E.2d at 502; Tallman v. E. Illinois & Peoria R.R. Co., 41 N.E.2d 537, 539 (Ill. 1942); Sowers, 503 N.E.2d at 1084.  Absent ambiguity, the intentions of the parties must be discerned solely from the language of the deed.  Urbaitis v. Commonwealth Edison, 575 N.E.2d 548, 552 (Ill. 1991).  The parties agree that the relevant deeds are not ambiguous. Def.'s Resp. at 2, 9; Pls.' Resp. at 5-6, 15.

There is no *per se* rule that a deed containing the term "right-of-way" conveys only an easement.  Urbaitis, 575 N.E.2d at 553 ("[T]here is no per se rule that the mere inclusion of the term 'right-of-way' in any deed to a railroad negates the possibility that title in fee simple was conveyed.").  While courts should attempt to give effect to the entire document, the granting clause is often the most informative clause of the deed.  Tallman, 41 N.E.2d at 537; Keen, 64 N.E.2d at 503; Urbaitis, 575 N.E.2d at 552; Sowers, 503 N.E.2d at 1086. When the term "right-of-way" appears in the granting clause of a deed, Illinois courts have consistently held that the deed conveyed an easement.  Tallman, 41 N.E.2d at 537 (granting clause "convey[ed] and warrant[ed] . . . as and for its right of way, a strip of land . . . ."); Branch v. Cent. Trust Co., 151 N.E. 284, 285 (Ill. 1926) (granting clause "conveyed . . . a railroad right of way . . . ."); Cleveland, Cincinnati & St. Louis Ry. Co. v. Cent. Illinois Public Serv. Co., 43 N.E.2d 993, 995 (Ill. 1942) (holding that a granting clause stating "we hereby grant, bargain, sell and release the right of way for said railroad" conveys an easement).  When the term "right-of-way" (or similar language) is not in the granting clause, Illinois courts have held that the deed conveyed a fee simple interest in the land. Keen, 64 N.E.2d at 503; Urbaitis, 575 N.E.2d at 552 (The deed did not convey an easement because [t]he sole references to the term 'right-of-way' in the [] deed are found in the conditions clause . . . ."); Sowers, 503 N.E.2d at 1086 (The term "right-of-way . . . in the consideration clause cannot be construed to limit the estate conveyed."); Penn Cent. Corp., 512 N.E.2d at 120 (holding that the phrase "for the purpose of" did not limit the conveyance to an easement); see also Barlow v. United States, 123 Fed. Cl. 186, 197 (2015).  Thus, in determining whether a deed containing the phrase "right-of-way" conveys a fee simple or an easement, the key question is whether "right-of-way" *refers* to the interest being conveyed, usually in the granting clause, or merely *describes* the interest being conveyed. Keen, 64 N.E.2d at 503; McVey v. Unknown Shareholders of Inland Coal & Washing Co., 427 N.E.2d 215, 217 (Ill. Ct. App. 1981) (The determinative question is "whether the granting clause conveys a designated strip or piece of land, or whether it refers to a right or privilege with respect to the described premises.").

In addition to these common law rules of deed construction, the Illinois legislature enacted the Conveyance Act in 1845 which created the rebuttable presumption that deeds containing the word "convey" transfers property in fee simple.  765 Ill. Comp. Stat. 5/13

(1872). Under the Conveyance Act, "[e]very estate in lands which shall be granted, conveyed, or devised . . . shall be deemed a fee simple of inheritance, *if a less estate be not limited by express words*, or do not appear to have been granted, conveyed or devised by construction or operation of law." Id. (emphasis added). The presumption may be overcome if the intent to convey a lesser estate is made clear by express words. Id.; Keen, 64 N.E.2d at 502-03; Sowers, N.E.2d at 1085.

> A. Chicago Coating does not have a Cognizable Property Interest in the Rail Corridor Adjacent to its Property because the Jones Deed Conveyed the Rail Corridor in Fee Simple.

The pertinent language in the Jones Deed is as follows:

> The Grantors . . . convey and quit claim . . . all interest in the following described Real Estate to wit: The right of way for railroad purposes over and across a strip of land . . . . [T]his grant is upon the Express condition nevertheless that the paid party . . . shall cause such premises to be used by [a] Railroad Company . . . .

Pls.' Mot., Ex. I; Def.'s Cross-Mot., Ex. 4. The Jones Deed is a statutory quitclaim deed because it purports to "convey and quit claim" some interest. 765 Ill. Comp. Stat. 5/10. Thus, there is a presumption that the Jones Deed conveys a fee simple that can be rebutted by express words indicating an intent to convey an easement. 765 Ill. Comp. Stat. 5/13; Keen, 64 N.E.2d at 502.

> 1. The Jones Deed's Granting Clause Supports the Rebuttable Presumption that the Deed Conveyed a Fee Simple.

While the parties agree that the granting clause contains only that language which indicates what interest is being conveyed, they disagree about what the Jones Deed purports to convey. Pls.' Mot. at 19; Def.'s Cross-Mot. at 18. The Plaintiffs argue that the Jones Deed granting clause consists of "convey and quit claim . . . *the following described Real Estate to wit: The right of way* . . . ." Pls.' Mot. Ex. I (emphasis added); see Pls.' Mot. at 19; Pls.' Resp. at 2. Under this reading, the object of the conveyance is "the right of way." Thus, Plaintiffs argue that under Illinois law a deed which conveys a "right of way" in the granting clause is limited to an easement. Tallman, 41 N.E.2d at 537; Branch, 151 N.E. at 285; Cleveland, Cincinnati & St. Louis Ry. Co., 43 N.E.2d at 995.

7

The Plaintiffs' reading of the Jones Deed is flawed in that it omits the term "all interest" from the granting clause.[2] See Pls.' Mot, Ex. I.  A proper reading of the granting clause shows that "all interest" is the object of the conveyance.  Under this reading, the Jones Deed intended to convey "all interest" they currently had in particular Real Estate described as "[t]he right of way."  Id.  "[R]ight of way" merely describes the Real Estate for which all interest is being conveyed.  See McVey, 427 N.E.2d at 217 (The determinative question when construing a deed is "whether the granting clause conveys a designated strip or piece of land, or whether it refers to a right or privilege with respect to the described premises.").  Moreover, according to 765 Ill. Comp. Stat. 5/13, a conveyance is deemed to be in fee simple unless a "less estate be . . . limited by express words . . . ."  The term "all interest" certainly does not amount to "express words" indicating a lesser estate than a fee simple.

Plaintiffs contend that conveying all interest in "the following described *Real Estate*" allows this Court to limit the Jones Deed to an easement because "real estate" is a general term that can be used to describe an easement.  Pls.' Mot., Ex. I (emphasis added); Pls.' Resp. at 4 (citing Bowman v. People, for Use of Hoxey, 82 Ill. 246, 248 (1876) (explaining that "all legal and equitable rights and interests is within the definition of real estate")).  They rely heavily on Magnolia Petroleum Co. v. West in which the Illinois Supreme Court held that a deed which "convey[ed] and warrant[ed]" to the grantee "the following described real estate, to wit: [description of land] to be used for road purposes" conveyed an easement.  30 N.E.2d 24, 25 (Ill. 1940).  However, the deed in Magnolia did not include the phrase "all interest" which made "real estate" the object of the conveyance and not merely a further description of the object being conveyed.  Id.  The Court held that the granting clause "specifies no estate" being conveyed and "to be used for road purposes" could therefore be "construed as declaratory of the intention."  Id. at 26.  Therefore, Magnolia is distinguishable from the facts present in this case.

When a document conveys "all interest", Illinois courts have held that it conveys as much as possible.  See e.g., Thornton v. Louch, 130 N.E. 467, 469 (Ill 1921) (interpreting a conveyance of "all right, title and interest" in "described real estate" as conveying every interest possessed by the grantor); Glos v. Furman, 45 N.E. 1019, 1021 (Ill. 1897) (stating that "[g]iving the words used their common and obvious meaning", conveying all interest in real estate amounts to conveying the real estate described without limits); In re Blair, 330 B.R. 206, 211 (Bankr. N.D. Ill. 2005) (holding that a statutory quitclaim deed conveying "'all interest" conveyed "all the then existing or equitable rights of the grantor' in the property described").

Thus, a plain reading of the granting clause strengthens the presumption that the Jones Deed conveyed a fee simple.  See 765 Ill. Comp. Stat. 5/10, 5/13.

---

[2] In fact, in their motion for partial summary judgment, the Plaintiffs represented the "relevant" language in the Jones Deed to be "'convey and quit claim . . . the following described Real Estate to wit: The right of way . . . .'" completely omitting "all interest" from the original deed language.  See Pls.' Mot. at 19.

8

### 2. Other Language in the Jones Deed Supports the Rebuttable Presumption that the Deed Conveyed a Fee Simple Interest.

While the granting clause is perhaps the most relevant part of a deed in determining the type of conveyance, the Court must consider the document as a whole and examine whether any language outside of the granting clause demonstrates the intent to convey only an easement. Tallman, 41 N.E.2d at 539; Keen, 64 N.E.2d at 502; Sowers, 503 N.E.2d at 1084.

First, the Plaintiffs argue that the inclusion of "for railroad purposes" and "over and across" demonstrates an intent to convey an easement. Magnolia Petroleum Co., 30 N.E.2d at 26 (holding that "to be used for road purposes" indicated an intent to convey an easement); Diaz v. Home Fed. Savings & Loan Ass'n, 786 N.E.2d 1033, 1042 (Ill. App. Ct. 2002) ("An interest that passes 'over and through' necessarily passes over and through something."). While this language could indicate an intent to convey an easement, it is by no means dispositive. When "for railroad purposes" or "over and across" are used in the description of the property, the estate conveyed is not limited to an easement but merely explains the motivation to execute the deed. See Barlow, 123 Fed. Cl. at 197; Keen, 64 N.E.2d at 503 (stating that the phrase "for the purpose of facilitating the construction" of a railroad was "merely the expression of the considerations which prompted the grantor to execute the deed . . . ."); Penn Cent. Corp., 512 N.E.2d at 120 (stating that language specifying the purpose of a conveyance and describing the conveyance as "over and through" a tract of land was "merely expressive of the purpose which motivated the grantor to make the conveyance"); Sowers, 503 N.E.2d at 1086 (stating that "when reference is made to the purpose of the grant . . . this [does] not limit the estate conveyed to be a mere easement").

The language in the Jones Deed is illustratively similar to deeds analyzed in Barlow by this Court. In Barlow, the deeds stated that the grantor did "convey and quitclaim . . . for railroad purposes . . . all interests in the following described real estate, to wit: a strip of land . . . ." 123 Fed. Cl. at 191. In both cases, the deeds conveyed all interest in a description of real estate. Applying Keen, Sowers, and Penn Cent. Corp., Judge Lydia Kay Griggsby held that "the words 'for railroad purposes' [were] intended to explain the reason for conveying [the real estate]" and did not limit the conveyance to an easement. Id. at 199. This Court agrees with the reasoning in Barlow and its applicability to this case. While the Barlow deeds describe the real estate being conveyed as a "strip of land" and the Jones Deed describes the real estate as "[t]he right of way," this difference alone is not reason to diverge from the holding in Barlow.

Second, the Plaintiffs point to language in the Jones Deed that retains the right to repossess the land if it ceased to be used as a railroad. See Pls.' Mot., Ex. I ("[T]his grant is upon the Express condition nevertheless that the paid party . . . shall cause such premises to be used by [a] Railroad Company . . . ."). Interpreting this language as an automatic

9

reversion, the Plaintiffs cite to Illinois case law stating that a deed which includes an automatic reversion indicates the intent to convey an easement. Dep't of Pub. Works & Buildings for & in behalf of People v. Schmauss, 285 N.E.2d 628, 629 (Ill. App. Ct. 1972) (holding that a deed conveyed an easement when it recited "the said land hereby granted shall revert to the said party [if] . . . ."). However, the express condition in the Jones Deed further states that the grantor (or their heirs or assignees) "shall have the *right to reenter* said premises and to *own*, use, occupy and enjoy the same as if the grant first above mentioned had never been made." Pls.' Mot., Ex. I (emphasis added). Importantly, the deed in Schmauss did not state that the grantor would have the right to reenter and "own" the conveyed property.

A plain reading of the express condition as a whole demonstrates that the reversion is not automatic but requires the grantors to reenter the premises and reassert their right of ownership (suggesting that the grantors had originally conveyed an ownership right). Under Illinois law, the express condition is more compatible with a conveyance of a fee simple interest subject to a condition subsequent. Powell v. Powell, 167 N.E. 802, 803-04 (Ill. 1929) (deed language retaining a right of reentry manifests the "intention to create a condition subsequent"); Mahrenholz v. County Board of School Trustees of Lawrence County, 417 N.E.2d 138, 140-42 (Ill. App. Ct. 1981). The railroad breached the express condition over 100 years ago and there is no record of the grantors or their heirs attempting to reenter the conveyance. See Def.'s Cross-Mot., Exs. 21-23. The statute of limitations applicable to the right of reentry has long passed, which means that BNSF now owns the segment of the rail corridor in fee simple that is no longer subject to any conditions. 765 Ill. Comp. Stat. 5/13-102, 330/5.

Finally, the Jones Deed contains a clause which states that the grantors "expressly waive and release any and all rights under and by virtue of . . . the Exemptions of homesteads," referring to a statute preventing a spouse from conveying land without express consent from the other spouse. Pls.' Mot., Ex. I; see Homestead Act 1857, Laws 1857, p. 119; Warner v. Crosby, 89 Ill. 320, 323 (1878). The homestead exemption protected a spouse, at the time a wife, from being alienated from her land without her knowledge and consent. Id. at 324. The homestead exemption applies most readily to conveyances of fees, not easements, because easements do not result in the total alienation from one's land. Boyd v. Cudderback, 31 Ill. 113, 118 (1863).

While particular clauses in isolation may seem consistent with the conveyance of an easement, the document as a whole demonstrates the intention to convey a fee simple interest. At a minimum, the Plaintiffs have not overcome the statutory presumption that the Jones Deed conveyed a fee simple according to 765 Ill. Comp. Stat. 5/13. Thus, Chicago Coating does not have a cognizable property interest in the rail corridor upon which to base a Fifth Amendment takings claim.

B. The Martinez Brothers do not have a Cognizable Property interest in the Rail Corridor Adjacent to their Property because the Wilkins Deed Conveyed the Rail Corridor in Fee Simple.

The pertinent language in the Wilkins Deed is as follows:

> [T]he said first party . . . hath *granted, sold and conveyed* [and] *warranted* to [Chicago & Southern Railroad Company] its successors and assigns that certain *strip or parcel of land* . . . described as follows – to wit: *a strip of land* . . . . [T]his conveyance is made upon the condition that said railroad company will locate a permanent railroad station . . . and will transport passengers [daily]. . . . [If this condition is not met] this conveyance shall become null and void, and the [railroad company] and its successor and assigns hereby agree thereupon to *reconvey by a good and sufficient warranty deed* to [the Wilkins] their heirs and assigns the premises above described.

Def.'s Cross-Mot., Ex. 3 (emphasis added). The Wilkins Deed is a statutory warranty deed because it purports to "convey[] and warrant[]" a parcel of land. 765 Ill. Comp. Stat. 5/9. Thus, like the Jones Deed, there is a presumption that the Wilkins Deed conveyed a fee simple interest that can be rebutted by express words indicating an intent to convey an easement. 765 Ill. Comp. Stat. 5/13; Keen, 64 N.E.2d at 502.

Based on the Illinois case law discussed in detail above, the Wilkins Deed conveyed a fee simple interest subject to a condition subsequent. Unlike the Jones Deed, the Wilkins Deed explicitly refers to a "strip of land" in both the granting clause and the description of the interest being conveyed. See Def.'s Cross-Mot., Ex. 3; Penn Cent. Corp., 512 N.E.2d at 119-20 ("[T]he phrase 'strip of land' is clear and unambiguous in purporting to convey the land itself in fee simple."). In addition, there is no reference to a right of way in or near the granting clause. Therefore, if the Jones Deed conveyed a fee simple under Illinois law, the Wilkins Deed clearly did as well.

The condition that the railroad continue to maintain a railroad station and carry passengers through the rail corridor, and the corresponding penalty for noncompliance, further demonstrate the intent to convey a fee simple interest. As stated above, when a deed contains a penalty for violating an express condition that requires some action to be taken by the parties, that deed most likely conveys a fee simple subject to a condition subsequent. Powell, 167 N.E. at 803-04; Mahrenholz, 417 N.E.2d at 142 (The conveyance of a fee simple subject to a condition subsequent is designed to "compel compliance with [the] condition by penalty of a forfeiture."). In this case, the Wilkins Deed mandates that the railroad company "reconvey by a good and sufficient warranty deed" the strip of land

11

back to the Wilkins, or their heirs or assignees. Thus, the Wilkins' reversionary interest is not automatic. Moreover, the requirement that the land be given back to the Wilkins using another warranty deed confirms that the Wilkins initially conveyed the land in fee simple using a warranty deed. Chicago & Southern Railroad Company violated the express condition when it never built a railroad station on the land. Def.'s Cross-Mot., Exs. 16-18. However, the Wilkins and their heirs never acted upon the penalty clause within the seven-year statute of limitations period. 735 Ill. Comp. Stat. 5/13-102. Therefore, BNSF currently owns the segment of the rail corridor in fee simple without any conditions.

The Plaintiffs again argue that the use of "for the purpose of the railroad" indicates the intent to only convey an easement. For the reasons described above, the Court is unconvinced that the inclusion of this phrase overcomes the statutory presumption that the Wilkins Deed conveyed a fee simple interest, the express words of the granting clause, and the absence of "right of way" anywhere in the document. Read in the context of the Wilkins Deed as a whole, "for the purpose of the railroad" more likely indicated a motivation for conveying the land to Chicago & Southern Railroad Company, not a limitation on that conveyance. Barlow, 123 Fed. Cl. at 199; Keen, 64 N.E.2d at 503; Penn Cent. Corp., 512 N.E.2d at 120; Sowers, 503 N.E.2d at 1086.

## Conclusion

For the above reasons, the Court finds that neither Chicago Coating nor the Martinez brothers have a property interest in the relevant segments of the rail corridor in dispute. Since the Plaintiffs failed to satisfy the first step of the three-part liability test laid out in Ellamae Phillips Co., the Government cannot be found liable for a Fifth Amendment taking under the Trails Act. Thus, the Court GRANTS the Government's cross-motion for summary judgment and DENIES the Plaintiffs' motion for partial summary judgment. The clerk is directed to enter judgment accordingly. No costs.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge